UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JENNIFER CARNAZZA, on behalf of her minor
daughter, S.C.,

                            *Plaintiff,*

  -against-

                                          Docket No.:1:25-cv-4752

SMITHTOWN CENTRAL UNION FREE SCHOOL
DISTRICT, SMITHOWN HIGH SCHOOL EAST,
SMITHTOWN CENTRAL BOARD OF EDUCATION
DR. MARK SECAUR SUPERINTENDENT OF
SMITHTOWN CENTRAL SCHOOLS, and GLENN
ROPER,

                                            **VERIFIED COMPLAINT**
                                            Jury Trial Demanded

                            *Defendant.*
-----------------------------------------------------------------X

      Plaintiff, JENNIFER CARNAZZA, on behalf of her minor daughter, S.C, complaining of

the above-named defendants, by and through her attorneys, JOHANNESEN & UMANA, P.C.,

respectfully states and alleges, upon information and belief that:

## NATURE OF THE CASE

      1.    Plaintiff brings this action to recover all legally cognizable damages for the

personal injuries, severe emotional harm, mental anguish, shame, humiliation and indignity

sustained by the Infant-Plaintiff, S.C., and for monetary loss sustained by Infant-Plaintiff S.C., and

JENNIFER CARNAZZA, by reason of health care expenses as a result of the personal injuries

sustained by them.

      2.    This action arose as a result of the carelessness, recklessness, negligence, gross

negligence, negligent instruction, negligent supervision, negligent retention, negligent training,

negligent infliction of emotional distress, willful disregard and continued failure to provide for the

safety and well-being of the Infant-Plaintiff S.C. while she was lawfully on school grounds, and

discriminatory actions giving rise to this action were committed by the Defendants SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL BOARD OF EDUCATION, DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS, and GLENN ROPER, their agents, servants and/or employees as a result of the within stated actions.

3.     This action is further based upon the Defendants' SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL BOARD OF EDUCATION, DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS, and GLENN ROPER violation of Infant-Plaintiff's State Civil Rights (NYS Civil Rights Law §40 et. seq.) and Federal Civil Rights (42 U.S.C. §1983).

4.     This action is further based upon the Defendants' SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL BOARD OF EDUCATION, DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS, and GLENN ROPER in violating and/or allowing the violation of the Plaintiff's Civil Rights, the New York Student Safety Act, New York State's Dignity for All Students Act, The Safe Schools Against Violence in Education Act, New York's Social Services Law Sections 413, 414, 415, 416, 417, 420, 421, 424-B; in violating New York's Child Protective Services Act; in violating the New York Human Rights Law and the New York State Executive Law Section 290, and Civil Rights Law Section 40; in allowing violations of Section 504 of the Rehabilitation Act of 1973, Title II and III of the Americans with Disabilities Act, and the Individuals with Disabilities Education Act.

5.     Additionally, the Plaintiff seeks punitive damages based upon the morally reprehensible, illegal discriminatory and culpable conduct of Defendants SMITHTOWN

CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL BOARD OF EDUCATION, DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS, and GLENN ROPER, their agents, servants and/or employees.

## JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and §§ 1343(a)(3) and (4), as this action seeks to redress for the violations of Plaintiff's civil rights pursuant to applicable federal statutes and regulations.

7.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs state law claims.

8.     Venue is proper in this matter pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all defendants are residents of Suffolk County in the Eastern District of the United States District Court of New York and all of the events or omissions giving rise to the claims set forth below occurred in Suffolk County in the Eastern District of the United States District Court of New York.

## PARTIES

9.     Plaintiff JENNIFER CARNAZZA, on behalf of her minor daughter, S.C., at all times relevant to this action, were, and still are, residents of Suffolk County in the Eastern District of the United States District Court of New York.

10.     At all times relevant, S.C., was a student in the Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, specifically in Defendant SMITHTOWN HIGH SCHOOL EAST, in Suffolk County.

11.     At all times relevant, S.C. was a minor child medically diagnosed with a disability which is fully documented and recognized by the Americans With Disabilities Act.

12.     At all times relevant, S.C. was required to be under an Individualized Education Plan ("IEP") as a result of such disabilities.

13.     Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT ("School District") is a municipal corporation duly organized, authorized and existing under and by virtue of the laws of the State of New York, with offices located at 26 New York Avenue, Smithtown, NY 11787.

14.     Defendant SMITHTOWN HIGH SCHOOL EAST ("School") is a public high school located at 10 School St, St James, NY 11780, owned and operated by the Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT.

15.     Defendant SMITHTOWN CENTRAL BOARD OF EDUCATION ("Board") is a municipal corporation duly organized, authorized and existing under and by virtue of the laws of the State of New York, with offices located in the County of Suffolk.

16.     Upon information and belief, Defendant DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS was, and still is, an employee of Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT.

17.     At all relevant times, Defendant DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS was, and still is, the superintendent of Defendant the School District.

18.     Upon information and belief, Defendant GLENN ROPER was, and still is, an employee of Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT.

19.     At all relevant times, Defendant GLENN ROPER was, and still is, a softball coach of the Defendant School.

**THE UNDERLYING FACTS**

20.     Throughout her entire life, S.C. has struggled with severe mental disabilities, including anxiety and OCD, as well as other learning disabilities.

21.     As a result of those disabilities, S.C. has been placed on an Individualized Education Plan ("IEP") for her entire school attendance.

22.     S.C. attended Middle School within the SMITHTOWN SCHOOL DISTRICT with such IEP.

23.     Prior to beginning high school, S.C.'s family supported her through her disabilities, allowing for her to flourish and succeed. S.C. lived with her parents, her brother, and her grandparents in the home.

24.     Prior to beginning high school, S.C.'s needs in the SMITHTOWN SCHOOL DISTRICT were also met. The Middle School teachers were aware of S.C.'s special needs, followed the requirements of her IEP, and allowed for her to continue to succeed in school both academically and socially.

25.     However, upon beginning high school, everything tragically changed for S.C.

26.     On September 9, 2021, S.C., started her freshman year at Defendant SMITHTOWN HIGH SCHOOL EAST.

27.     It became immediately obvious that the staff at SMITHTOWN HIGH SCHOOL EAST were not equipped to deal with her disabilities and were not following the terms of her IEP. Nevertheless, because of her practiced coping mechanisms, developed social skills, and familial support, S.C. was at least stable for the beginning of the school year despite its early challenges.

28.     Also on September 9, 2021, S.C. experienced an *extremely triggering event* for anyone, but *especially* for someone suffering with anxiety and OCD; S.C.'s live-in grandfather

passed away tragically in her home, causing a complete disruption in her life, stability, and daily routine.

29.     The loss of such a close family member is tragic and disrupting for anyone. But for someone suffering from anxiety and OCD, any small change in the daily routine can cause a complete and total uproar in the symptoms she suffers from.

30.     For S.C., she fell into a very dark place facing the symptoms of her disabilities. S.C. became completely unable to leave her home. Not only could she not leave her home, but she was mentally unable to leave her kitchen and was stuck on one specific chair. Even during bedtime, S.C.'s disabilities required her to stay in the same place, in the kitchen, on one specific chair.

31.     The School was aware of, not only the familial tragedy that S.C. and her family had just suffered, but also of the extreme and pervasive symptoms which her disability began to cause her to face. But rather than assisting their disabled student in returning to the School to a stable and welcoming social, academic environment, the School decided to ostracize S.C. for her newfound behaviors and encouraged its student body to do the same and to treat them as strange.

32.     As a result of her newfound difficulties in leaving one place in her home, S.C. began to experience constant, pervasive, and daily bullying and harassment at the hands of numerous classmates, specifically A.I., and S.A., both in person on the School grounds and at home via text message. S.C. could not escape the abuse of the student body even in her safe place in her kitchen. Such bullying including but was not limited to: refusing to accept S.C.'s newfound behaviors, calling them "weird" or "freak[ish]", spreading false rumors in efforts to blame her newfound behaviors on external factors, intentionally leaving S.C. by herself during her lunch break and telling other students not to sit with her, ganging up on her, persistent name calling, and constantly made insulting public comments like "no one wants to be around her". These bullying incidents

were reported to multiple agents of the School. First, the bullying was reported to Ms. Rodriguez, the school psychologist, an employee of Defendant SMITHTOWN HIGH SCHOOL EAST, on numerous occasions. The bullying and harassment were also reported to Ms. Carberry, S.C.'s teacher, another employee of Defendant SMITHTOWN HIGH SCHOOL EAST. No actions were taken to rectify such bullying and harassment of S.C by any agents of the School and thus, in the eyes of the bullies, they were accepted and encouraged.

33.     On or around February 2022, and as a result of such bullying and harassment, daily targeted attacks, and no corrective action taken by the Defendants, S.C., began treating with Dr. Saurabh Gupta, a psychiatrist associated with Stony Brook Hospital. She was again diagnosed with severe anxiety and obsessive-compulsive disorder with such heightened symptoms that she was prescribed 150mg of Zoloft to address her worsened-conditions. These conditions were documented by Dr. Gupta to be caused by severe and pervasive bullying by her classmates and teachers at the School. Additionally, it became increasingly *more* difficult for S.C. to leave her home for school, her grades dropped, she began having issues sleeping with disordered eating, and started to treat with a psychologist.

34.     In order to attempt to cope with her worsened conditions and to develop healthy social/physical activities, S.C.'s family and psychiatric specialists encouraged her to join an after-school sport activity. S.C. had always excelled in sports and her support system believed that this might be an intentional way for her to be re-accepted by the student body, especially now that she was medicated.

35.     Rather than reintegrating S.C. into the social graces of her peers, because of the allowances and encouragement by the School staff members in the athletic department, attempting to join the softball team is what effectively worsened S.C.'s condition.

36.     Several instances of bullying and harassment occurred from on or about March 2022, through on or about May 2022, as S.C. took part of the Defendant SMITHTOWN HIGH SCHOOL EAST's junior varsity softball team, including but not limited to, a physical harassment incident within the locker room of Defendant SMITHTOWN HIGH SCHOOL EAST, leading to S.C. experiencing a mental and emotional breakdown. Plaintiff JENIFFER CARNAZZA notified employees of Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT of such repeated incidents of bullying. Additionally, a meeting with several employees of Defendant SMITHTOWN HIGH SCHOOL EAST, specifically, Assistant Principals, Mr. Aleci and Ms. Stech, along with social worker Jeremy Melnick, was held to address the several acts of bullying and harassment. No corrective action was taken by Defendants and as such, a DASA report was filed.

37.     More instances of bullying and harassment took place on or about June 2022, some of which were **witnessed** by an employee of Defendant SMITHTOWN HIGH SCHOOL EAST, Ms. Flynn. Such repeated incidents led to the filing of a second DASA report, a drop of grades and GPA average by S.C., and increased visits to a psychologist. Employees of Defendants were made fully aware of such bullying and harassment, such as Jason Pettis, Kevin Colon and Ms. Flynn. Defendant DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS was also made aware.

38.     After the 2022 school year, during the summer break, Plaintiff JENNIFER CARNAZZA noticed a change in her daughter being out of the School environment. S.C.'s symptoms of her disabilities softened, and she was more properly able to function. But as the summer neared an end and the thoughts of returning to the hostile environment of the School crept back in, S.C.'s symptoms of anxiety worsened again.

39.     To Plaintiffs' dismay, after the summer break, the targeted bullying and harassment of S.C. continued onto the 2023 school year. S.C. continued to take 150 mg of Zoloft to manage the stress from the bullying. She continued to take additional medication prescribed by her primary care physician, who evaluated her every three months. Additionally, S.C. was forced to continue regular sessions with her psychiatrist.

40.     In fact, in 2023, the bullying conditions worsened with the introduction of Defendant GLENN ROPER into S.C.'s life at the School. Starting on or about March 2023, Defendant GLENN ROPER introduced retaliation into S.C.'s regularly experienced exclusion and harassment. Defendant GLENN ROPER began by purposely withholding S.C. from moving up from junior varsity to varsity softball. Additionally, Defendant GLENN ROPER was aware of the constant bullying and harassment endured by S.C. in the junior varsity softball team and not only failed to prevent further incidents but actually encouraged them with her peers.

41.     On or about May 3, 2023, after two months of encouraged harassment by Defendant GLENN ROPER, such incidents of bullying and harassment had expanded to threatening messages to S.C. such as messages about getting "beat up" and "making her life a living hell". Such threatening text messages were immediately forwarded to the assistant principal of Defendant SMITHTOWN HIGH SCHOOL EAST, Jason Pettis. Defendants failed to correct and/or prevent such behavior, thus accepting and allowing-for such behavior in the eyes of the bullies.

42.     Throughout the 2023 school year, S.C.'s symptoms became unbearable. During the summer prior to the beginning of the 2024 school year, S.C. had another emotional and mental breakdown with the serious fear of returning to the hostile and discriminatory environment produced and/or encouraged by Defendants. As such, her mother, Plaintiff JENNIFER

CARNAZZA decided that she had to do something to take her daughter out of the School environment.

43.     On or about September 2024, S.C. was enrolled in BOCES, in an attempt to get her away from the daily bullying and harassment occurring at Defendant SMITHTOWN HIGH SCHOOL EAST. S.C.'s grades began to see **improvement** the longer she was away from Defendant's facility. Unfortunately, the acts of bullying and harassment persisted into S.C.'s lunch break and during her after school activities, the only times during the day that she was required to be at the toxic environment at the School.

44.     With regard to her lunch breaks, the employees of Defendant SMITHTOWN HIGH SCHOOL EAST, including but not limited to the assistant principal, Mr. Aleci, refused to place S.C. in a different time slot for lunch than her known bullies.

45.     With regard to her after school activities, specifically in May 2024, Defendant GLENN ROPER, began to  constantly harass the infant Plaintiff about her psychiatric appointments, medication, and other disabilities throughout the 2024 softball season. Additionally, Defendant GLENN ROPER, continuously failed to intervene and/or stop the harassments and bullying of S.C. during softball practice and/or games, thus encouraging such behavior in the eyes of the team he was hired to supervise. Plaintiff JENNIFER CARNAZZA reported her displeasure directly to Defendant GLENN ROPER on several instances due to his own harassment and bullying of S.C. due to her medical disabilities, and his failure to prevent further bullying and harassment by the other students/players.

46.     On or about May 15, 2024, Plaintiff JENNIFER CARNAZZA e-mailed several employees of Defendants to express her concerns regarding the continuous acts of bullying and harassment against S.C. by her peers and by Defendant GLENN ROPER, including but not limited

to, leaving S.C. out of softball news articles, photos, and publications. Such concerns were e-mailed directly to employees of Defendant SMITHTOWN CENTRAL BOARD OF EDUCATION, including but not limited to, Jason Lambert and Stacey Murphy. No actions were taken to correct and/or prevent further incidents of bullying and harassment against S.C.

47.     On or about May 28, 2024, Plaintiff JENNIFER CARNAZZA notified the assistant superintendent of Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, Dr. Kevin Simmons, of the bullying and harassment of S.C. by her peers and by Defendant GLENN ROPER, including but not limited to, malicious text messages sent to S.C.'s private cellphone by Defendant GLENN ROPER. No corrective actions were taken by Defendant SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, despite their expressed concern for the harassing behavior displayed by Defendant GLENN ROPER.

48.     By June 2024, S.C. was no longer able to be in the same room as Defendant GLENN ROPER due to his constant harassment and discrimination regarding her medical conditions. In fact, S.C. was not able to attend the end of the year softball pool party due to Defendant GLENN ROPER's presence at that pool party. Even though this pool party occurred outside of school and was intended to be a social event for the team, Defendant GLENN ROPER decided to take it as an opportunity to intimidate and exclude S.C. He admitted to such efforts through his text messages to other teammates asking if S.C. would attend. These actions were all communicated to employees of Defendants SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL BOARD OF EDUCATION, and DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS. No corrective and/or preventive action was ever taken. In fact, no meetings were scheduled to address any of the Plaintiffs' concerns.

**AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973, TITLE II OF THE AMERICAN WITH DISABILITIES ACT, and THE INDIVIDUALS WITH DASABILITIES ACT (IDEA)**

49.    Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as thought fully set forth herein.

50.    Pursuant to Section 504 "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

51.    Program or activity is defined under Section 504(2)(B) as a local educational agency (as defined in section 8801 of Title 20), system of vocational education, or other school system.

52.    Pursuant to Title II of the Americans with Disabilities Act, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. The term public entity means any state or local government and/or any department, agency, special purpose district, or other instrumentality of a State or local government. Additionally, pursuant to section 202, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

53.    The acts and omissions of Defendants SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT, SMITHTOWN HIGH SCHOOL EAST, SMITHTOWN CENTRAL

BOARD OF EDUCATION, DR. MARK SECAUR SUPERINTENDENT OF SMITHTOWN CENTRAL SCHOOLS, and GLENN ROPER violated infant Plaintiff S.C.'s rights because she experienced harassment, discrimination, and retaliation based on her medical disabilities and protected activity.

54. The harassment, discrimination, and retaliation, which included but was not limited to, verbal harassment, harassment via text message, and intrusive questioning about S.C.'s medical conditions, created a hostile school environment for S.C., of which Defendants had actual notice.

55. Infant Plaintiff S.C. was deprived of access to educational programs, activities, and opportunities, i.e., S.C.'s grades and grade point average severely declined in direct response to the Defendants' violations, eventually reaching a 2.2 GPA. Furthermore, S.C. had to enroll in a BOCES program in order to receive an education free from harm.

56. Defendants were deliberately indifferent to the discrimination, retaliation against, and harassment of S.C. based on her medical disabilities in violation of Title II because they failed to intervene when S.C. was constantly being bullied and harassed, including by Defendant GLENN ROPER, and failed to discipline the perpetrators that made derogatory comments towards her and the teachers and/or administrative staff members employed by the Defendants that permitted said discriminatory behavior.

57. Defendants have acted with deliberate indifference and willful disregard of obvious risks of harassment and the harassment is so severe that it effectively barred S.C.'s access to an educational opportunity, benefit, and destroyed her entire high school experience.

58. Through their deliberate indifference, Defendants caused S.C. to be further subjected to the above-described disability discrimination, retaliation, and harassment.

59.     Any responses by Defendants were not reasonably calculated to end the discrimination, retaliation, and harassment that S.C. was experiencing.

60.     In addition, Defendants treated the perpetrators more favorably than S.C., including reprimanding S.C. and Plaintiff JENNIFER CARNAZZA for defending against the provocation, while failing to discipline the perpetrators, and failing to discipline the perpetrators for their actions.

61.     Defendants' actions were so severe, pervasive, and objectively offensive that S.C. suffered severe emotional distress.

62.     As a result of Defendants' unlawful actions, Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education, pain and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION – MONELL LIABILITY

63.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

64.     Defendants School District, Board, and Superintendent, acting under color of state law, deprived S.C. of the right to freedom of speech under the First Amendment to the U.S. Constitution by virtue of an official policy or custom that caused her Constitutional injuries, in at least the following ways: failing to adequately train School District staff about policies prohibiting discrimination, harassment, bullying, and retaliation on the basis of disability, and/or failing to adequately supervise School District staff, including but not limited to, Defendant Superintendent and assistant superintendent Dr. Kevin Simmons, in carrying out their duties, and/or failing to adequately train School District staff as to the manner in which to investigate, complaints of

harassment/discrimination/retaliation on the basis of disability; refusing to enforce written policies, remaining deliberately indifferent to the fact that a violation of Plaintiffs' right to Equal Protection was a highly predictable consequence of Defendants' conduct; and repeatedly failing to discipline and/or address students for discriminating and harassing behavior, thereby impliedly communicating this behavior was acceptable and perpetrators would go unpunished.

65. These policies, practices, or customs of the School District and Board, and their policy makers, have substantially contributed to the retaliation, and are an implicit sanction of oppression of free speech against S.C.

66. Further, Defendants School District, Board, and Superintendent, were aware of the perpetrators' retaliatory harassment and discrimination but adopted a policy and/or practice of treating the perpetrator more favorably than the victims, which included failing to discipline perpetrators for their actions thereby creating an inference that perpetrators would go unpunished, and that Defendants would not intervene or respond to any complaints of bullying.

67. Defendants School District, Board, and Superintendent, further engaged in a pattern and practice of behavior designed to discourage and dissuade parents of students who had been victimized by disability discrimination from seeking protection and/or corrective action, including by minimizing the nature and effect of incidents, reprimanding S.C. and Plaintiff JENNIFER CARNAZZA when attempting to protect and defend themselves, including by expelling Mrs. Carnazza from school grounds, and by failing to properly and timely respond to DASA complaints. This policy and/or practice constituted disparate treatment.

68. Defendants' School District, Board, and Superintendent violations of the First Amendment proximately caused Plaintiffs to suffer injuries including severe emotional distress.

69.     As a result of Defendants' School District, Board, and Superintendent unlawful actions. Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education pain, and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

PENDANT STATE LAW CLAIMS

## AS AND FOR A THIRD CAUSE OF ACTION FOR HARRASSMENT PURSUANT TO NYS HUMAN RIGHTS LAW 296(4)

70.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

71.     Executive Law Section 296(4) provides that, "[i]t shall be an unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, age, marital status, or status as a victim of domestic violence, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex.

72.     Further, Defendants failed to discipline and/or punish faculty and student for harassing behavior, such as persistent bullying, text message harassment, and/or discriminatory slurs towards S.C.

73.     As a result of Defendants' unlawful actions, Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education pain, and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR FAILURE TO SUPERVISE AND PROTECT

74.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

75.     S.C. was a student at SMITHTOWN HIGH SCHOOL EAST within the SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT and was owed a duty of care by Defendants.

76.     Defendants have a duty of reasonable care to ensure students' safety while in and on school grounds, provide adequate supervision of students and/or properly train its staff to manage, care for and educate the students.

77.     Defendants breached its duty of care to S.C. when it failed to keep her safe and provided inadequate supervision, by way of allowing S.C. to be bullied, harassed, and discriminated against by students and staff.

78.     More specifically, Defendants failed to adequately train School and School District staff about policies prohibiting harassment, discrimination, and bullying on the basis of disability and/or failed to adequately supervise School and School District staff, in carrying out their duties, and/or failed to adequately train School and School District staff as to the manner in which to investigate complaints of harassment/discrimination/bullying on the basis of disability.

79.     Defendants' breach directly and proximately caused Plaintiffs and S.C. to suffer injuries, including emotional distress.

80.     As a result of Defendants' unlawful actions, Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education pain, and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

81.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

82.     S.C. was a student at SMITHTOWN HIGH SCHOOL EAST within the SMITHTOWN CENTRAL UNION FREE SCHOOL DISTRICT and was owed a duty of care by Defendants.

83.     Defendants have a duty of reasonable care to ensure students' safety while in and on school grounds, provide adequate supervision of students and/or properly train its staff to manage, care for and educate the students.

84.     Defendants breached their duty of care to S.C. when it failed to keep her safe and provided inadequate supervision, by way of allowing S.C. to be bullied, harassed, and discriminated against by students and staff.

85.     More specifically, Defendants failed to adequately train School and School District staff about policies prohibiting harassment, discrimination, and bullying on the basis of disability and/or failed to adequately supervise School and School District staff, in carrying out their duties, and/or failed to adequately train School and School District staff as to the manner in which to investigate complaints of harassment/discrimination/bullying on the basis of disability.

86.     Defendants' behavior was so extreme, outrageous, utterly reprehensible, and intolerable in a civilized society because Defendants negligently permitted S.C. to be subjected to daily verbal abuse, harassment, and bullying; and failed to rectify such acts throughout the most part of S.C.'s time as a high school student.

87.     Defendants' conduct directly and proximately caused S.C.'s emotional distress.

88.     As such, S.C. suffers from mental health issues, was prescribed medication, began to treat with a psychiatrist, and continues to undergo, intensive mental health treatment to deal with the trauma.

89.     As a result of Defendants' unlawful actions, Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education pain, and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90.     Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

91.     Defendants' behavior was so extreme, outrageous, utterly reprehensible, and intolerable in a civilized society because Defendants negligently permitted S.C. to be subjected to daily verbal abuse, harassment, and bullying; and failed to rectify such acts throughout the most part of S.C.'s time as a high school student.

92.     Defendants' conduct directly and proximately caused S.C.'s emotional distress.

93.     As such, S.C. suffers from mental health issues, was prescribed medication, began to treat with a psychiatrist, and continues to undergo, intensive mental health treatment to deal with the trauma.

94.     As a result of Defendants' unlawful actions, Plaintiffs have suffered physical injury, emotional distress, denial of a free and appropriate education pain, and suffering, thereby entitling Plaintiffs to compensatory damages, punitive damages, costs, expenses, and reasonable attorneys' fees, in an amount to be determined at trial.

### DEMAND FOR JURY TRIAL

95. Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as though fully set forth herein.

96. Plaintiffs hereby demand a trial by jury.

**WHEREFORE**, plaintiffs demand judgment against the Defendants, jointly and severally, to recover for all of their damages, all together with the costs and disbursements of this action.

Dated: Rocky Point, New York
August 22, 2025

JOHANNESEN & UMANA, P.C.
*Attorneys for Plaintiff*
544 Route 25A
Rocky Point, NY 11778
(631) 559-1018

By:

Luis A. Umana, Esq.

## <u>VERIFICATION</u>

**JENNIFER CARNAZZA** being duly sworn says: I am one of the Plaintiffs in the action herein.

I have read the annexed Verified Complaint, know the contents thereof and the same is true to my

knowledge, except those matters therein which are stated to be alleged upon information and belief,

and as to those matters, I believe to be true.

Dated: _____, New York
      August 21, 2025

_____
JENNIFER CARNAZZA

Sworn to before me on this
22 day of August, 2025.

Notary Public

AMANDA SMITH
Notary Public, State of New York
No. 01SM6192569
Qualified in Nassau County
Commission Expires September 8, 20__

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JENNIFER CARNAZZA, on behalf of her minor
daughter, S.C.,

                                        *Plaintiff,*

   *-against-*

SMITHTOWN CENTRAL UNION FREE SCHOOL
DISTRICT, SMITHOWN HIGH SCHOOL EAST,
SMITHTOWN CENTRAL BOARD OF EDUCATION
DR. MARK SECAUR SUPERINTENDENT OF
SMITHTOWN CENTRAL SCHOOLS, and GLENN
ROPER,

                                        *Defendant.*
----------------------------------------------------------------X

---

## SUMMONS AND VERIFIED COMPLAINT

---

JOHANNESEN & UMANA, P.C.
*Attorneys for Plaintiff*
544 Route 25A
Rocky Point, NY 11778
(631) 559-1018

---

Signature (Pursuant to Rule 130-1.1a)


_____
Luis A. Umana, Esq.

Dated: August 22, 2025